We have four cases on the calendar this morning, a patent case from the district court, a patent case from the PTO, a veteran's case, and a government employee case which is being submitted in the briefs and therefore will not be argued. The first case is Microsoft v. GeoTag. Actually, it's Google now, right, v. GeoTag, 2015-11-40. Mr. Rees. Yes, Your Honor. May I proceed? Please proceed. From what I heard on the radio this morning, it's actually alphabet now, isn't it? Thank you, Your Honor. Thank you for allowing me to speak. My name is Joel Rees. I'm a lawyer in Dallas at Rees Court in Marquettos. I'm joined today by my client, John Veenstra, one of the original inventors on the patent, the 474 patent, as well as the owner of GeoTag. May I proceed, Your Honor? Please. I'm going to have one primary request here today in that this court reverse the motion to dismiss and send it back to the trial court with orders to dismiss and vacate the case because there is no subject matter jurisdiction. The second, in the alternative, if this court finds that there is jurisdiction, I request the court reverse the summary judgment ruling and send it back to the trial court for a new trial. One of your core arguments seems to be that even if a permissible counterclaim could create jurisdiction, it makes no difference because GeoTag's counterclaims were compulsory. That's sort of a core argument of yours, isn't it? Partially. I think both sides say that whether it's permissive or compulsory, it doesn't matter. Okay. So you'd agree with that, that whether it's compulsory or permissive doesn't make any difference? I do. I do agree with that. And the reason that issue came up is in the trial court, the district court used that as one of their basis and made an argument out of permissive versus compulsory. So the parties kind of carried that through. But I think Google argues it doesn't matter if it's permissive or compulsory. We argue it doesn't matter. I think both sides put in briefing about that issue. But at the end of the day, the counterclaim cannot create jurisdiction is our argument. Thank you for clarifying. Sure. The entire issue on the jurisdiction comes down to was there a definite and concrete dispute that was real and substantial between GeoTag and Google in March of 2011? Well, you still did customers. You're correct, Your Honor. They had sued several customers in Texas, and that was essentially the basis. And I'll get into what I believe the seven reasons why this court would not have jurisdiction and why the district court did not have jurisdiction. First and foremost, there were no affidavits. There were no testimony. There was nothing in the record to say that on the Google side they were concerned, that they thought there was a dispute. They thought they would get sued. None of that. What they said is our customers have been sued, and we think that creates a dispute. Number two, if you look in the response to the original first motion to dismiss, they never argued that point. They never argued that they thought they would be sued. Rather, the argument at that period of time was jurisdiction should be based on the fact we supply a material component. You've sued our customers, and they have demanded indemnity. We haven't indemnified them, but they've demanded it. That was the basis. And as we know, later that becomes an impermissible basis under the Data Turn case. And the corollaries between this and the Data Turn case could not be closer. This case was filed a month before the Data Turn case. Data Turn was filed right after this. It involved the same Microsoft. It's the same allegations. It basically started the same way. Number three, my third point, is if you look at their original complaint, whether we had a dispute, they didn't ask for a declaration of non-infringement by Google. They asked whether their customers had infringed or not. They asked for a non-infringement declaration on behalf of their customers. Keep in mind, there's already proceedings down in Texas over the very same patents. Next, on latches, my fourth point, there was a motion for summary judgment on latches. This is evidence in the record. Google presented an affidavit stating that Geotag never told Google that it, too, might be sued or that Geotag believed it had a claim against Google. So unlike the normal motion to dismiss, you have extra evidence here in the record showing on behalf of Google. They never told us we'd get sued. Now, you brought this counterclaim, right? You're correct, Your Honor. We did. And you're saying there's no jurisdiction for us or the district court to hear the counterclaim that you brought? Absolutely, Your Honor. And why don't I go straight into the counterclaim argument? That was going to be my next argument, but I want to address that because that's their lead-off argument. Their lead-off argument starts with, if a counterclaim presents an independent basis for jurisdiction, the court may adjudicate it as if it was an original claim. And they cite ten cases. Now, in my perspective, this is an easy one on the law. They are completely wrong on the law. And how do we know that they're wrong on the law? One, it's contrary to data term. If you look at data term on page 906, it says, a declaratory judgment plaintiff must plead facts sufficient to establish jurisdiction at the time of the complaint, and post-complaint facts cannot create jurisdiction where none existed at the time of filing. It's contrary to the Holmes Group v. Vernado, the U.S. Supreme Court case, where that court was deciding whether this court had jurisdiction under 1295A. In that case, the Supreme Court said they wanted to find uniformity between 1338, which governs the district court's jurisdiction, and this court, 1295A's jurisdiction. And so they looked, the Holmes Court, the United States Supreme Court, looked at, okay, under 1338, you can't have a counterclaim in patent create jurisdiction. So, for that perspective, we want it to be uniform with the Federal Circuit so the Federal Circuit doesn't have jurisdiction in that case. So if this case were decided and your court finds jurisdiction, it will be directly contrary to the Holmes opinion. Next. If we don't agree with you on jurisdiction, what about the merits? If you were not to agree with me on jurisdiction, Your Honor, the key to the merits discussion, and I was not going to get into much of the merits discussion because I think it's easily decided on the jurisdiction, and I'm going to come back to the jurisdiction in a moment. That's sort of a risky proposition. It is. It's not to deal with the merits. But let me deal with the merits of the issue right now. If you look, the whole summary judgment opinion comes down to page 16 of the summary judgment order, and there's a key sentence in that order that kind of gives the court's reasoning on why, I mean, keep in mind, summary judgment was graded on one limitation, no dynamic replication. That was it. And that key sentence says, Google's accused system does not trace up linkages in a hierarchy or repeat the search in order to obtain results from a broader geographic area as the claim limitation would require and thus cannot meet dynamic replication requirement of the 474 patent. So what it's saying is you have to either trace up a linkage in a hierarchy or conduct a second search. Our point is, and you have to look, how did he get to this tracing up a linkage? Is it anywhere in the patent? No. What's the thought process behind that? We think it started in the claims construction, and then it carried from the claims construction all the way through to the summary judgment, and then there was some slight change in the summary judgment stage that then allowed him to say no dynamic replication. Let me explain that. Aren't there also other portions on that same page you've cited that suggest that the district court was looking at this even more broadly? For example, on the same page, which is 830, it says it's uncontested that the accused system conducts its search against all the keyword IDs and ad group IDs and then consecutively filters this list of results. In other words, the accused system performs a single search and then starts progressively filtering. Isn't that another ground that the district court was relying on for finding non-infringement? I view the non-infringement to be based on the conclusion that he reached. So I didn't view that opinion that way, that we were required to trace up a linkage or conduct a second search. And I understand the court's point, but I think the conclusion on that page 16 was you don't trace up a linkage and you don't conduct a second search, so therefore you don't have dynamic replication. So you would have us look at that sentence in isolation? No, I think that sentence is the end of the conclusion from his analysis. But if you look, if that is the reasoning, which I believe it is, the court said they limited, at the claims construction stage, limited dynamic replication to automatic inheritance as opposed to inheritance and copying. And this is error because there's three other courts that interpret the same term and included copying. There's nothing replicating, of course, in our opinion, would mean copying. Second, the court at the claims construction stage said they limited it to a parent-child relationship. So once you have a parent-child relationship, and no other court had done that either, so once you have a parent-child relationship and once you have automatic inheritance, what they say is then you have to trace up the linkage in order to have dynamic replication. We believe that's error. And let me, very quickly, there were a couple of points I wanted to cover. I didn't get through in the jurisdiction points. In key to the jurisdiction, I was going through seven points. And if you look at this case from the other prior cases, you look at the Aris case. In the Aris case, you had a 180-page presentation that was provided and months and months of negotiations. You don't have anything like that here. That's why they found jurisdiction in Aris. Do you think that's wrong as a matter of law, or is it distinguishable from this case? The Home Depot analogy is that if you make a hammer and you sell a hammer, and I see that you've sued somebody in connection with a hammer, therefore, I think I'm going to get sued. Here's how I would respond to that. I think that's completely irrelevant on these facts, and here's why. There's nothing in the record from anyone at Google that said, hey, I saw they were suing on hammers, or I saw they were suing on this, and it made me believe there was a dispute. I thought there was a dispute. There is a dispute. There's nothing in the record, and the reason that doesn't come up is because that hammer analogy and that whole issue is part of this fully hosted issue, that we fully host everything. For example, we make the entire hammer. We do all steps. If you look at the record and look at the history of that argument, it didn't come up until after summary judgment. The words fully hosted never appear in the original in 2011. It comes up three years later after the summary judgment ruling. Then they start arguing fully hosted. I say, wait a second, there's no fully hosted in the complaint. There's no argument of fully hosted in any of this complaint. So then they say, well, let us amend the complaint. They then amend the complaint. They offer no evidence in connection with that issue. They simply plead that issue, and then the key missing link, okay, if that's such a big deal, then you should have someone from Google saying, I knew that we fully hosted these customers. It concerned me. It made me think we had a dispute. We're trying to figure out if there's a real and concrete dispute. Mr. Reese, you're into your rebuttal time. You can continue or save it if you wish. I would save it, Your Honor. Thank you very much. All right. Mr. Josepher. Good morning. May it please the Court. Let me ask you a housekeeping question. You argue for third circuit law rather than the law of this circuit on the propriety of the motion to dismiss. But the geotagged motion raised the question of whether its counterclaims arise under the patent law. And, of course, that fits squarely with the expertise of this circuit. So convince me that third circuit should apply rather than third. Sure. I think some aspects are third circuit law, some aspects are federal circuit law. It's a mix. That's a fair enough answer. But to specifically explain which is which, if that's helpful. I mean, generally speaking, subject matter jurisdiction is a question of regional circuit law. But with respect to the declaratory judgment claims, which aren't even in the case anymore, whether that states a case for controversy this Court has held is federal circuit law because it deals with patent claims specifically. Also, whether a patent law counterclaim is permissive or compulsory, federal circuit law because it deals with patent claims specifically. But then on the more general question of if we do have a counterclaim over which there is an independent basis for jurisdiction, can a court exercise jurisdiction over that? That's a question that you can state that question without ever using the word patent. So that's a question of regional third circuit law, which would be controlled then by the Marengo decision. And that's our view of how it breaks down. Now, with respect to jurisdiction, because the only claim remaining in the case is Geotech's counterclaim, the most direct way of looking at jurisdiction is just to point out that there's unquestionably an independent basis for jurisdiction over the counterclaim. It's a claim for damages under the Patent Act for alleged ongoing infringement. And because there's independent basis for jurisdiction there, that's sufficient under the Marengo line of authority. In terms of the contrary cases they cite, first, data turn is nothing to do with this because it dealt with declaratory judgment jurisdiction over the claims in a declaratory judgment complaint. It just didn't deal with this counterclaim issue at all. And then second, Holmes Group in footnote four expressly distinguishes the line of cases we're relying on in making clear that it's not displacing them at all. It acknowledges them. It does not overrule them. It distinguishes them. And therefore, no court or commentator has ever suggested that Holmes Group overruled this old and settled line of authority. So when they say that a decision in our favor would be directly contrary to what the Supreme Court said in Holmes, it's the exact opposite. A decision that Holmes Group overruled, what it expressly distinguished, would be directly contrary to what the Supreme Court said. And you'd ask before, Judge Wallach had asked before about whether it matters if the counterclaim is permissive or compulsory. Under Third Circuit precedent, it does not. It's the same result either way. I do think, though, that the fact that it's permissive makes this a particularly easy case. Because given the fact that they chose to pursue this counterclaim in this case, they didn't have to. They chose to pursue it. And they chose then, even after the original complaint was dismissed, to litigate it all the way through to a summary judgment hearing on the merits, at which point they apparently figured out, as we did, how this was likely going to go. It's too late for them then to try to step out of this because there was allegedly no jurisdiction over a different claim in the case. That would be fundamentally unfair to everybody. Because then, well, one, I mean, they didn't have to bring this. It was permissive because it's a different product, therefore different transactional facts. And two, regardless, even if it had been compulsory, though, once it's been litigated and there's an independent base of jurisdiction over it, it's not fair to anyone, either party or the courts, to say that we're then going to have a do-over if the Court of Appeals disagrees about jurisdiction on a different claim. On the merits, it's a simple point, which is that Google's accused products work in the exact opposite way of the claimed invention. Because the claimed invention is to a very specific way of searching a geographically organized database that entails both a search of a geographic region and dynamic replication of entries from a broader area. So at a minimum, you need two things, a search and the addition of entries from a broader area. And here, there's just nothing that even resembles the second of those. Because instead, what Google does is to run a single search for all responsive ads without geographic restriction through its entire database. And then, having gathered that one search, that one set of ads, it just decides which ones to show. There's no addition of entries from some other broader area. In fact, there isn't even a broader area. In terms of Judge Stoll's questions about the context, obviously, we agree. And I think the key point, there are a few key points. But one, it's on appendix page 60, page 15 of the court's opinion. After it describes the undisputed facts, the first thing it says is that, quote, the key portion of the description of the facts, the key portion, is that, quote, at no point does the accused system do anything more than return results from the defined search area. In other words, there's nothing beyond returning results from the single search area. There's no else. There's no automatic addition. And then it gives us, in context, we think it gives them as examples of that. There's no tracing up of links in the hierarchy. There's no second search. There's the other statements that Judge Stoll wrote about you just have a search against all the keyword IDs and then a filtering after that.  What the court is saying is that the key point is that at no point does the accused system do anything more than return results from the defined search area. Those two points, the jurisdiction over the counterclaim and the actual basis for the summary judgment decision, seemed to us to be sufficient. If the court would like me to also briefly address DJ jurisdiction, I could. It seems a little odd that the claims aren't even here. I think it's worth doing. Judge Stoll had asked about the theory based on direct infringement. And that's exactly the point. For here, Google's customers, many, many, many customers are being sued in East Texas. Some of their two categories are customers. For some of them, those are hosted customers by Google. Google itself, on its servers, has all of the relevant functionality for the customer. So the acts that the customer is alleged of engaging in, in those suits, Google itself actually engaged in all of them. That makes this a uniquely strong case for a DJ claim. If you look into whether there's an adversity of legal interest between the parties, not only does Google have many customers being sued, but Google itself is actually performing some of the actions for which they're being sued. For some customers, all of the actions for which they're being sued. It's even stronger than the Home Depot analogy. Because in Home Depot, the idea is if you sue Home Depot for selling a hammer, and I make the hammer, then one of us is directly liable. We both are. How do you respond to Mr. Reese's point about how this wasn't fully developed in the original complaint? First, he's correct that it was not pled in Google's original complaint. A couple points on that. First, it's now beside the point because the district court allowed us to file an amended complaint, and that exercise of discretion is not even challenged on appeal. So the operative complaint is the amended complaint, which walks through the hosted allegations in detail. Second, what happened then is they filed a motion to dismiss, which didn't seriously dispute this. They dropped a footnote, a conclusory footnote, just sort of disputing the hosted customer but with no meaningful basis for that. So in our response to the motion to dismiss, what we did is we attached places where they have stipulated that these, including OfficeMax, were in fact Google-hosted customers, meaning customers for whom Google has the data on their servers. And those are the stipulations not to sue that were filed in Texas, filed in court by them, stipulating that these customers, including OfficeMax, were hosted customers and defining what that meant. Those are in the record and in our brief. So that's the evidence. They've come back with nothing other than their conclusory assertion and a footnote that it's not so. And so we pointed out in our response, if the district court really wanted more evidence than that, we could. But that's a stipulation in court that they're bound by. And also the first amount of complaint does displace the original. Also, their discussion of earlier litigation is unfair, because although the original complaint did not, the hosted customer theory was, in fact, litigated earlier on, as confirmed by the fact that the stipulation not to sue Google or its customers over the claims in Google's original complaint specifically acknowledges that Google was a declaratory judgment on both direct and indirect infringement. And it then stipulates not to sue for either direct or indirect. That's beside the point, because once you've got the First Amendment complaint as the operative complaint, it's alleged, it's proven by the stipulations in court, and there's nothing to the contrary. But they are also being unfair about earlier. And then in terms of... Sorry, I was just looking over notes to see what else had already been covered. In terms of then declaratory judgment based on the allegations of indirect infringement, the point here, again, is that we're talking about, as the district court pointed out, I mean, first we're talking about hundreds of customers being sued. Second, with Google being, with there being, as the district court said in its first jurisdictional decision, a limited number of companies that provide these types of mapping services, which is a bit of an understatement, it's the fact that customers were sending indemnification demands to Google indicating that they believed that this was based on their use of Google's products was highly credible. And then third, you have in the record, which the district court relied on, the evidence that Google was instructing its customers in detail on how to use Google's services to provide store locators on their websites for the non-hosted customers. So with respect to inducement, you have the district court correctly concluded that there's no dispute that Google knew of the patent, at least at the time that it filed its DJ complaint. And second, there's also irrefuted evidence in the record, three sets of different instructions to customers, with a lot of technical detail in them, as to how to use these products to create store locators, which then covers the inducement elements for purposes of there being a real controversy here as to indirect infringement. The main argument that we hear from Geotag is that there's not evidence in the record as to the subjective beliefs of anyone who works at Google or Geotag. But of course, that's not the question, because we have an objective, I mean, the reason there's no evidence in the record of people's subjective beliefs is it would be, one, improper, and two, irrelevant. Because the question is, objectively speaking, is there a substantial controversy between parties of adverse legal interests and immediacy here? And we know that there is, because there are all kinds of suits being filed over these mapping services. The indemnification demands the fact that Google's one of the very few providers, along with Microsoft. And the instructions, I mean, are all very powerful evidence on the record here with respect to, yes, under the DataTurn standard, the patentee's allegations and the other evidence in the record, that's what DataTurn says, establish the reasonable potential that a claim could also be brought against Google. That's the standard that's framed in DataTurn, under which it found that some claims gave rise to DJ jurisdiction, others did not. And that's exactly what we have here. So I think everything else they argue is really just a red herring when you look at what the facts are, objectively speaking. And the law is, objectively speaking, with respect to jurisdiction. If the court has no more questions. So as of this morning, are you now Alphabet? Oh, a while. It was actually, I think in the fall, Google did do the switch to Alphabet, where Alphabet owns a few different companies, including Google Inc. now. I think the news this morning is that I think Alphabet's price has now risen to the point where it's bigger than pretty much anyone else. But yeah, it was this fall. Thank you, Mr. Joseph. And Mr. Reese has a few minutes of rebuttal time if he needs it. Sure. Let me respond to a couple of points. One, this issue that fully hosted. First of all, the stipulation doesn't say fully hosted or anything about fully hosted. It's at record location A617172. It doesn't. That's not an issue. Where the fully hosted comes up again after summary judgment, they come in and say, we fully hosted. I say there's nothing in the record about that. They amend the complaint. The issue is they're arguing, okay, well, we raise it in the amended complaint, so therefore that's the only thing you should look at. The issue is even in the amended complaint, you look at the facts at the time of March 2011. In March of 2011, was anyone, anyone at Google, anyone here, did anyone know anything about this fully hosted issue? Or, as we contend, did it come up later in an effort to create this jurisdiction argument later? This issue about the case. I have a question for you. Absolutely. On page A12 in the district court's opinion on jurisdiction, it says geotag does not dispute that third circuit law allows for subject matter jurisdiction over permissive counterclaims. Is that right? No. I do not believe that is correct. It's right in the district court's opinion. Yeah. There was a discussion that we had regarding permissive and compulsory, and let me address that briefly. We believe this is absolutely a compulsory counterclaim. When they sue us and they sue us on this particular patent against us, if we don't file that claim, we risk losing all of our claims against Google. So there was a lot of discussion and briefing on that issue where they were saying third circuit. And we said, well, even if third circuit law applies, which it doesn't, it doesn't matter because this was a compulsory counterclaim. The court took that to mean if it's permissive, there's jurisdiction, and that's not the case. So back to this issue, how do we know that they're wrong on that issue? If you look at the ten cases they've cited, all of them other than one were decided before Holmes. All of them. So you're looking at cases 20 years old. You look at our cases, new, new, new, recent, 2011, 2014. Look at the first circuit opinion in Cytologics. Cytologics Corp versus Ventana. They say the same point I'm raising right now in footnote one. They say, based on Holmes, the prior cases holding to the contrary are no longer good law. If you even look in the Hughes case, the part that they're talking about, Justice Stevens, he cites the case they're relying on, Ringo, and he says in his concurrence, he says, these cases stood for this proposition. Then Justice Stevens says, I agree with the majority that a counterclaim cannot create jurisdiction. So I don't think there should be any serious issue on that one point. I appreciate the court's time. Thank you very much. Thank you, Mr. Weiss. We'll take the case under review.